CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
(E-Mail: cuauhtemoc_ortega@fd.org)
GABRIELA RIVERA (Bar No. 283633)
(E-Mail: gabriela_rivera@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
CARLITOS RICARDO PARIAS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLITOS RICARDO PARIAS,<br><br>Defendant. | Case No. 2:25-cr-00904-FMO<br><br>***EX PARTE* APPLICATION FOR ORDER DIMISSING CASE WITH PREJUDICE** |

Defendant Carlitos Ricardo Parias, through undersigned counsel, hereby files this *ex parte* application for an order dismissing his case with prejudice, due to the government's decision to detain him in immigration custody notwithstanding the Court's order releasing him on bond pending his criminal trial. This application is based on the attached memorandum of points and authorities, the accompanying declaration of counsel, all records and files in this case, and such further information as may be provided to the Court. The government opposes this application.

Respectfully submitted,

DATED: December 10, 2025    By  */s/ Cuauhtemoc Ortega*
　　　　　　　　　　　　　　　　CUAUHTEMOC ORTEGA
　　　　　　　　　　　　　　　　Federal Public Defender
　　　　　　　　　　　　　　　　GABRIELA RIVERA
　　　　　　　　　　　　　　　　Deputy Federal Public Defender
　　　　　　　　　　　　　　　　Attorney for Carlitos Ricardo Parias

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Two judges of this Court have now rejected the government's request to detain defendant Carlitos Ricardo Parias pending trial. Most recently, on December 9, 2025, the district court denied the government's request to reverse the magistrate judge's order releasing Mr. Parias on bond. Notwithstanding the affirmed order of release, the government at the hearing said it will continue detaining Mr. Parias in administrative immigration custody at the Adelanto Detention Center (Adelanto). Government counsel conceded at the hearing that detaining Mr. Parias in Adelanto would make it more difficult for him to access counsel. But it had no solutions to offer, other than to suggest the Court could rescind its release order so that Mr. Parias might be returned to Metropolitan Detention Center-Los Angeles (MDC). Of course, doing so would be contrary to law, as it would subvert the mandates of the Bail Reform Act (BRA), 18 U.S.C. § 3142, et seq., which the Court has determined requires release. It is within the government's power to stop or suspend the immigration proceedings now underway to permit the criminal matter to proceed without interference and with Mr. Parias released on bond as the Court has ordered, but it has chosen not to. As a result, Mr. Parias finds himself less than a month from the beginning of trial in a facility remote from his counsel where he is unable to meaningfully participate in preparing his defense, in violation of his Fifth and Sixth Amendment constitutional rights. Though the Court may lack authority to order Mr. Parias released from immigration custody at this juncture, it has unambiguous authority to manage the criminal case over which it is presiding. For the reasons discussed herein, the Court should dismiss the criminal case with prejudice.

## II. ARGUMENT

### A. Legal Standard

"If the government, by placing [a criminal defendant] in immigration detention or removing him, jeopardizes the district court's ability to try him, then the district

1

court may craft an appropriate remedy." *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015) (citing with approval *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1170, 1180–81 (D. Or. 2012)). In *Trujillo-Alvarez*, the district court analyzed the BRA, specifically 18 U.S.C. 3142's bond provisions, and the Immigration and Nationality Act, specifically the statutory provisions surrounding ICE detainers at 8 U.S.C. §§ 1231(a)(5) and 1103(a)(3), and the regulatory provision for detainers at 8 C.F.R. § 287.7(a). The district court's analysis *Trujillo-Alvarez* is instructive and directly on point.

      In that case, the district court reasoned that "[if] the Executive Branch chooses not to release the Defendant and instead decides to abandon criminal prosecution of the pending charge and proceed directly with Defendant's removal and deportation, the law allows the Executive Branch to do that." 900 F. Supp. 2d at 1170. "If, however, the Defendant is not released pending trial as directed by the [District] Judge pursuant to the BRA, the pending criminal prosecution of the Defendant may not go forward." *Id*. "To hold otherwise would deprive the Defendant of his statutory right to pretrial release under the BRA and possibly even deprive the Defendant of his Fifth Amendment and Sixth Amendment rights to due process and effective assistance of counsel, respectively." *Id.* "If the Executive Branch intends to exercise its ICE detainer for the purpose of removing and deporting [the defendant], it appears that it may well have the legal authority to do so. ICE does not, however, have the authority to detain [a defendant] for the purpose of avoiding the pretrial release provisions of the BRA." 900 F. Supp. 2d at 1176.

      "If, however, the Executive Branch chooses to pursue the criminal prosecution . . . under the pending charge, then [the defendant] must be promptly returned . . . and released pending trial on the pretrial release conditions previously imposed by [the District Judge] in accordance with the BRA." *Trujillo-Alvarez*, 900 F. Supp. 2d at 1180–81. "That is Defendant's statutory right under the BRA, and its continuing violation threatens Defendant's constitutional rights." *Id.* "Accordingly, the Executive

2

Branch has a choice to make." *Trujillo-Alvarez*, 900 F. Supp. 2d at 1179. "What neither ICE nor any other part of the Executive Branch may do, however, is hold someone in detention for the purpose of securing his appearance at a criminal trial without satisfying the requirements of the BRA." *Id.* The district court further held "if [the accused] is returned to this district and released on the conditions previously imposed by [the Magistrate judge] by [a time-certain date], then the pending criminal prosecution may proceed. If, however, he is not returned and released by that date and time, the pending criminal charge will be dismissed with prejudice." *Id.* at 1181.

**B.     Application**

As in *Trujillo-Alvarez*, if Mr. Parias is not returned and released "by that date and time [as set by the Court] the pending criminal charge [should] be dismissed with prejudice." *Id.*; *see also United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1112 (D. Minn. 2009); *United States v. Ailon-Ailon*, 875 F.3d 1334, 1339 (10th Cir. 2017); *see also United States v. Tapia*, 924 F. Supp. 2d 1093, 1098 (D.S.D. 2013).

Mr. Parias has now twice been ordered released by judges of this Court, yet the Executive Branch has conspired to keep him in custody, even as government counsel in the instant criminal case concedes that holding Mr. Parias in Adelanto complicates his access to counsel. The Court should ignore government counsel's claims of helplessness regarding Mr. Parias's immigration detention. The Department of Justice (DOJ) and the Department of Homeland Security (DHS) are part of the same branch of government. If the DOJ seeks to prosecute Mr. Parias for criminal charges that carry a statutory maximum penalty of 20 years' imprisonment, then it needs to work with its sister agency to release Mr. Parias consistent with the Court's order, rather than standing idly by while Mr. Parias is deprived of his constitutional rights to access counsel and prepare his defense.

By way of background, Mr. Parias first arrived at Metropolitan Detention Center-Los Angeles (MDC) on October 26, 2025.[1] He was initially arrested on October 21, 2025, after a group of masked and unidentifiable officers descended on him while he was in his car preparing to go to work. (*See* Dkt. 21.) The officers trained their weapons on Mr. Parias and at least one officer recklessly and unnecessarily fired shots directly at him, presumably with the intent to kill him, but instead striking and wounding him in the arm.[2] Mr. Parias was unarmed and inside a vehicle surrounded by law enforcement, who were aware (or should have been aware) that he had no criminal history whatsoever. As a result of the government agent's improper use of force, Mr. Parias underwent surgery and was hospitalized for almost a week before being transferred to MDC on October 26. While he was detained at MDC, the defense team met with Mr. Parias to begin preparing his case for trial. Mr. Parias has been receiving insufficient care for his gunshot wound (both at MDC and Adelanto), which causes significant pain and discomfort. The defense team coordinated its schedules to facilitate regular in-person legal visits with him so that in addition to preparing for trial, it could monitor his pressing medical condition.

As stated in previous filings, on November 24, 2025, the defense team learned that, although the Bureau of Prison's online Inmate Locator suggested Mr. Parias remained at MDC, he was in fact in the custody of DHS. (*See* Dkt. 45.) The defense

---

[1] The facts contained in this section are sworn to by counsel in the attached declaration.

[2] Defense counsel immediately sought discovery in this matter, including the production of all videos related to the October 21 incident. On December 9, defense counsel raised with the Court concerns regarding whether all videos had been produced, and the Court ordered government counsel to file a declaration by December 10 addressing the government's production of video footage. On December 10, government counsel produced for the first time the body worn camera footage of the agent who shot Mr. Parias. The video footage shows that the agent ran up to Mr. Parias's car, smashing his window as Mr. Parias cried, "No tengo nada," presumably under the belief that he was about to be robbed by the masked and unidentifiable men who had surrounded his car. The agent then shifted his firearm from his right hand to his left and shot directly at Mr. Parias's torso, striking and wounding Mr. Parias in the arm. *See* Exhibit A. It is obvious from the video that Mr. Parias posed no threat at the time he was shot.

4

team's understanding is that he was detained for a period of time that day in the basement of the federal building located at 300 N. Los Angeles St. The short-term DHS detention center in the basement is known as "B-18," and civil rights advocates have long raised concerns that the conditions there are inhumane, which caused the defense team concern given Mr. Parias's sensitive medical condition.

On November 25, the defense team confirmed that Mr. Parias had been moved and was being detained at Adelanto in the high desert of San Bernardino County. The team immediately began making efforts to schedule a legal visit with Mr. Parias. Because the detention center is almost a 2-hour drive *each way* from downtown Los Angeles, the defense team has been unable to conduct an in-person visit with him. Carving out a four-hour block of driving time for a single visit is not a reasonable expectation for busy federal practitioners less than a month from the start of trial.

Adelanto claims to offer pre-scheduled appointments for legal visits, including by video-telephone conference (VTC), but the defense team has been unsuccessful at scheduling one. On December 2, 2025, the defense team called Adelanto and was told by the operator that a "Ms. Camargo" is in charge of scheduling visits. The operator volunteered to the defense team that she had been fielding complaints "for the last couple of weeks" that Camargo fails to return calls or schedule visits. She assured us that Camargo would eventually return our calls. The defense team was transferred to a voicemail, which instructed that we only leave one message because multiple messages would further slow the response time.

Members of our office, including members of Mr. Parias' defense team, have visited Adelanto in connection with our representation of other individuals subject to prolonged immigration detention. We know from experience that the remoteness of the facility, in stark contrast to the 10-minute walk between the Federal Public Defender's Office and MDC, poses obstacles to communication with our clients. We also know from experience, and from concerns raised by advocates for legal representation of persons detained at Adelanto, that there are numerous barriers to having the privileged

5

conversations that would be necessary in order to adequately prepare Mr. Parias's defense.

The prejudice Mr. Parias has experienced from being held in Adelanto has migrated from the theoretical to the actual in the last couple of weeks. The defense team has been unable to review *any* discovery with Mr. Parias, which in turn has limited our ability to investigate his case and draft motions. The Court's December 4, 2025, motion filing deadline has now passed, and because of the lack of access to our client (and incomplete discovery), we were unable to meet it. It is worth noting that the government continued to produce discovery into the late evening of December 5, 2025, the Court's discovery cut-off date, and it then produced additional discovery on December 10—after the cut-off. Were Mr. Parias properly released on bond, or at the very least at MDC, the defense team could already have reviewed the discovery with him in full. As it stands now, the defense remains at a standstill, unable to make meaningful progress toward preparing for trial because of our Mr. Parias's remote detention.

The defense team's review of discovery so far has revealed that trial in this case will involve significantly contested issues of fact that the defense needs to investigate, including by reviewing video footage and reports with Mr. Parias. The case will also involve significant motion practice, if the Court permits it now that the motions deadline has passed, including regarding the government's misconduct in using excessive force against Mr. Parias. With a quickly approaching trial date, this review needs to happen now, consistently, and in person, with the assistance of a Spanish-language interpreter, not sporadically when counsel can spend four hours on the road per visit, or by VTC, which Adelanto has not scheduled, and which does not offer the privacy conditions required to foster a transparent, trusting attorney-client relationship.

Further complicating pretrial preparation is the effect immigration detention is having on Mr. Parias' health and his ability to engage with the proceedings. We are aware from our office's experience, and from concerns raised by advocates, that

6

persons detained at Adelanto are regularly denied medical care and/or provided substandard medical care, sometimes resulting in death.

The pain Mr. Parias is suffering from the gunshot wound federal agents recklessly inflicted on him persists. He is receiving ibuprofen when he seeks help, which is not enough to control pain caused by a bullet piercing the body. The pain, which he could more successfully manage with private care, noticeably interfered with his ability to focus when we met with him at MDC and when we've spoken to him at recent court proceedings. After the December 4, 2025, hearing, Mr. Parias' pain was so great he was injected with pain killers on his return to Adelanto. Part of what aggravated his pain is that he did not sleep properly before being transported. Given the distance between Adelanto and the Court, the defense team understands he was picked up from Adelanto at approximately 2:00 AM for transportation to the 2:30 PM hearing on December 4 and, then again, at the same time, for the December 9 hearing at 10:00 AM. The distance between Adelanto and the Court, coupled with the pain from gunshot wound, will make it impossible for Mr. Parias to remain alert, much less meaningfully participate in his defense at hearings leading up to trial and during trial.

With only three weeks to go before trial, Mr. Parias has clearly shown that the government's decision to continue to detain him in immigration custody, even as it simultaneously pursues criminal charges, has interfered with his Fifth and Sixth Amendment rights to counsel and to participate in his defense. The government's conduct has been intentional, fully aware of the complications it has caused to the defense team. The Court should dismiss this matter with prejudice.

### III. CONCLUSION

If the Executive Branch elects to institute proceedings against Mr. Parias in immigration court, it may do so, but it must follow the law that governs the criminal proceedings it chooses to simultaneously pursue. It fails to do so here by continuing to detain Mr. Parias in a manner that interferes with his ability to access counsel and

1 | prepare for trial, in violation of BRA and the Fifth and Sixth Amendments to the
2 | Constitution. The Court should dismiss the case with prejudice.

Respectfully submitted,

DATED: December 10, 2025          /s/ *Cuauhtemoc Ortega*
                                  CUAUHTEMOC ORTEGA
                                  Federal Public Defender
                                  GABRIELA RIVERA
                                  Deputy Federal Public Defender
                                  Attorney for Carlitos Ricardo Parias

8

# DECLARATION OF COUNSEL

I, Cuauhtemoc Ortega, hereby state and declare as follows:

1. I am the Federal Public Defender for the Central District of California. I, along with Deputy Federal Public Defender Gabriela Rivera, represent Carlitos Ricard Parias in the above-entitled action.

2. Mr. Parias first arrived at Metropolitan Detention Center-Los Angeles (MDC) on October 26, 2025. He was initially arrested on October 21, 2025, after a group of masked and unidentifiable officers descended on him while he was in his car preparing to go to work. The officers trained their weapons on Mr. Parias and at least one officer fired shots directly at him, striking and wounding him. As a result, Mr. Parias underwent surgery and was hospitalized for almost a week before being transferred to MDC on October 26.

3. While he was detained at MDC, I and other members of the defense team met with Mr. Parias to begin preparing his case for trial and to monitor his medical condition. Mr. Parias has been receiving insufficient care for his gunshot wound, which results in significant pain and discomfort. I and other members of the defense team coordinated our schedules to plan regular in-person legal visits with him to both prepare for trial and monitor his medical condition.

4. On November 24, 2025, we learned that, although the Bureau of Prison's online Inmate Locator suggested Mr. Parias remained at MDC, he was in fact in the custody of the Department of Homeland Security (DHS). The defense team's understanding is that he was detained for a period of time that day in the basement of the federal building located at 300 N. Los Angeles St. The short-term DHS detention center in the basement is known as "B-18," and civil rights advocates have long raised concerns that the conditions there are inhumane, which caused us concern given Mr. Parias's sensitive medical condition.

5. On November 25, the defense team confirmed that Mr. Parias had been moved and was being detained at the Adelanto Detention Facility (Adelanto) in the

1

high desert of San Bernardino County. We immediately began making efforts to schedule a legal visit with Mr. Parias. Because the detention center is almost a 2-hour drive *each way* from downtown Los Angeles, we have not been able to conduct an in-person visit with him. Carving out a four-hour block of driving time per visit is not a reasonable expectation for busy federal practitioners less than a month from the beginning of trial.

6. Adelanto claims to offer appointments for legal visits, including video-telephone conference (VTC) visits, but we have been unsuccessful at scheduling one. On December 2, 2025, the defense team called Adelanto and was told by the operator that a "Ms. Camargo" is in charge of scheduling visits. The operator volunteered to the defense team that she had been fielding complaints "for the last couple of weeks" that Camargo fails to return calls or schedule visits. She assured us that Camargo would eventually return our calls. We were transferred to a voicemail, which instructed us to leave one message only because multiple messages would further slow the response time.

7. Members of our office and of the defense team have visited Adelanto in connection with our representation of individuals subject to prolonged immigration detention. We know from experience that the remoteness of the facility, in stark contrast to the 10-minute walk between our office and MDC, poses obstacles to communication with our clients. We also know from experience, and from concerns raised by advocates that legal representation of persons detained at Adelanto, that there are numerous barriers to having the privileged conversations that would be necessary in order to adequately prepare Mr. Parias's defense.

8. Our lack of access to Mr. Parias has prejudiced our ability to prepare for his trial. We have not been able to review any discovery with our client, which in turn has limited our ability to investigate his case and draft motions. The Court's December 4, 2025, motion filing deadline has now passed, and because of the lack of access to our client, we were unable to meet it. Undersigned notes that the government continued to

produced discovery past December 5, 2025, the discovery cut off date. Were Mr. Parias on bond as ordered by the Court, or at the very least at MDC, we could have by now reviewed discovery with him in full.

9. This case involves significantly contested issues of fact that the defense needs to investigate, including by reviewing video footage and reports with Mr. Parias. With a quickly approaching trial date, this review needs to happen now, consistently, and in person, with the assistance of a Spanish-language interpreter, not sporadically when counsel can spend four hours on the road, or by VTC, which Adelanto has not scheduled, and which does not offer the privacy conditions required to foster a transparent, trusting attorney-client relationship.

10. Further complicating pretrial preparation is the effect immigration detention is having on Mr. Parias' health and his ability to engage with the proceedings. We are aware from our office's experience, and from concerns raised by advocates, that persons detained at Adelanto are regularly denied medical care and/or provided substandard medical care. For example, in September and October of this year, two men who had resided in the United States for decades died within weeks of being detained at Adelanto.[3]

11. The pain Mr. Parias is suffering from the gunshot wound federal agents recklessly inflicted on him persists. He is chiefly receiving ibuprofen when he complains of pain, which is not enough to control the pain caused by a bullet piercing the body. The pain, which he could more successfully manage with private care, noticeably interfered with his ability to focus when we met with him at MDC and when we've spoken to him at recent court proceedings. I understand that after the December 4, 2025, hearing, Mr. Parias' pain was so great he was injected with pain killers on his

---

[3] Meg James, "Deaths in ICE Custody Raise Serious Questions, Lawmakers Say," L.A. TIMES, (Nov. 22, 2025, 1:58 p.m.) https://www.latimes.com/california/story/2025-11-22/ice-custody-deaths-raise-congress-member-questions-ismael-ayala-uribe

3

1  return to Adelanto. Part of what aggravated his pain is that he did not sleep properly
2  before being transported.  Given the distance between Adelanto and the Court, I
3  understand he was picked up from Adelanto at approximately 2:00 AM for
4  transportation to the 2:30 PM hearing on December 4 and for the December 9 hearing.
5  The distance between Adelanto and the Court, coupled with the pain from gunshot
6  wound government agents recklessly inflicted on him, will make it impossible for Mr.
7  Parias to remain alert, much less meaningfully participate in his defense at hearings
8  leading up to trial and during trial.
9     12.   Exbibit A filed with this application is a true and correct copy of the video
10  produced to the defense by the government in discovery.
11     I declare under penalty of perjury that the foregoing is true and correct to the best
12  of my knowledge.
13     Executed on December 10, 2025, at Los Angeles, California.

                                                          /S/   Cuauhtemoc Ortega   .
                                                          CUAUHTEMOC ORTEGA