CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
(E-Mail: cuauhtemoc_ortega@fd.org)
GABRIELA RIVERA (Bar No. 283633)
(E-Mail: gabriela_rivera@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
CARLITOS RICARDO PARIAS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 2:25-cr-00904-FMO |
|---|---|
| Plaintiff, | **REPLY TO GOVERNMENT'S OPPOSITION TO *EX PARTE* APPLICATION FOR ORDER DIMISSING CASE WITH PREJUDICE; EXHIBITS 1-8** |
| v. | |
| CARLITOS RICARDO PARIAS, | |
| Defendant. | |

Defendant Carlitos Ricardo Parias, through undersigned counsel, hereby files his reply to the government's opposition to his *ex parte* application for an order dismissing his case with prejudice. This reply is based on the attached memorandum of points and authorities, the accompanying declarations, all records and files in this case, and such further information as may be provided to the Court.

Respectfully submitted,

DATED: December 15, 2025      By  /s/ *Cuauhtemoc Ortega*
                                  CUAUHTEMOC ORTEGA
                                  Federal Public Defender
                                  GABRIELA RIVERA
                                  Deputy Federal Public Defender
                                  Attorney for Carlitos Ricardo Parias

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The government fails to identify authority that binds this Court's ability to ensure a criminal defendant's constitutional right to access counsel and participate in his defense is not violated, including by actions the government itself takes. The Ninth Circuit in *United States v. Diaz-Hernandez*, 943 F.3d 1196 (9th Cir. 2019) did not take up the question presented here, it addressed a completely unrelated issue regarding whether the fact of immigration detention could be factored into a detention risk of flight analysis. The out-of-circuit authorities the government relies on, including *United States v. Soriano Nunez*, 928 F.3d 240 (3d Cir. 2019), are not binding on this Court, but even if they were, they do not preclude the Court from dismissing this case based on its determination that defendant Carlitos Ricardo Parias's immigration detention is inhibiting his ability to access counsel and participate in his defense.

The Court should dismiss this matter with prejudice.

## II. ARGUMENT

**A. The Legal Sources Cited by the Government are Irrelevant and/or Do Not Prohibit the Court from Dismissing this Matter for Infringements on Mr. Parias' Constitutional Rights**

The government claims that Mr. Parias's motion fails "as a matter of law," citing to *Diaz-Hernandez*, but the case is irrelevant to the instant matters. In that case, the Ninth Circuit addressed whether a district court could consider the existence of an Immigration and Customs Enforcement (ICE) detainer in determining whether to set bail. In that matter,

> Counsel argued that [the ICE] detainer negated any risk of flight because if the district court released Diaz-Hernandez, he would be detained by ICE. Counsel thus contended that the government could not meet its burden of establishing that Diaz-Hernandez was a flight risk. The district court, however,

1

> declined to 'wade into the likelihood that the detainer would be withheld or filed' and thus did not consider the effect of any immigration detainer in assessing whether pre-trial release was proper.

943 F.3d at 1198. The Ninth Circuit on review held "that the district court properly declined to consider Diaz-Hernandez's immigration detainer in assessing whether pre-trial detention was appropriate under the Bail Reform Act." *Id.* at 1199.

Here, the Court has already ordered Mr. Parias released (twice) on grounds unrelated to those at issue in *Diaz-Hernandez*. The portion of the opinion the government cites is out of context, and merely states the obvious—that "detention of a criminal defendant pending trial pursuant to the Bail Reform Act and detention of a removable alien pursuant to the Immigration and Nationality Act are separate functions that serve separate purposes and are performed by different authorities." *Id.*; Gov't Opp., Dkt. 61, at 3. *Diaz-Hernandez* does not address the problem in this case, which centers on the district court's authority to manage a criminal matter it plainly has jurisdiction over, including by dismissing it because the defendant's constitutional rights have been infringed.

The government also cites to *Soriano Nunez,* out of the Third Circuit. In that case, the defendant moved either to dismiss her indictment or obtain release from detention. The Court found it lacked jurisdiction to consider her motion to dismiss, but addressed the question of pretrial release. 928 F.3d 243-244. Defendant argued that the Bail Reform Act (BRA) and the Immigration and Nationality Act (INA) "conflict insofar as the INA allows for the detention of a criminal defendant who has been granted release under the BRA." *Id.* at 245. The Court held that the district court "correctly declined to hold that Soriano Nunez's BRA release order mandated her release from ICE detention." *Id.* at 247. It noted that "[n]o court of appeals that has examined [the defendant's] assertion has concluded that pretrial release precludes pre-removal detention." *Id.* at 245. It did not list a Ninth Circuit decision in its string cite.

2

      The problem with *Soriano Nunez* and the cases it cites in support of its holding, is that, in addition to not being controlling on this Court, they are irrelevant to the contested issue in this case. The government misunderstands the defense's argument as one that claims the Court should dismiss this case simply because Mr. Parias is in ICE custody, even though he has been granted bail in the criminal proceedings. In its opening brief, the defense acknowledged the Court "may lack authority to order Mr. Parias released from immigration custody at this juncture," Def. EPA, Dkt. 54, at 2, but asserted that the Court, regardless of a co-existing ICE detention order, has the authority to dismiss a criminal case before it based on constitutional right violations.

      The matter at issue here is whether Mr. Parias' remote immigration detention, whether legally justified or not, is functionally depriving him of access to counsel and interfering with his right to prepare for his defense for trial, which is scheduled to start in 15 calendar days. The government has nothing to say about that matter, other than to claim Adelanto's visitation policy is not unreasonable—a claim easy for it to make from the comfort of its own offices, without the same need to have constant access to Mr. Parias as the trial date quickly approaches.

      The only Ninth Circuit authorities that touch on the issues in Mr. Parias's *ex parte* application are those cited in his opening brief. The district court in *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1170, 1180–81 (D. Or. 2012), observed that immigration detention concurrent with a criminal prosecution could "possibly even deprive the Defendant of his Fifth Amendment and Sixth Amendment rights to due process and effective assistance of counsel." The Ninth Circuit described *Trujillo-Alvarez* as "persuasive[]" in stating that, "If the government, by placing [a criminal defendant] in immigration detention or removing him, jeopardizes the district court's ability to try him, then the district court may craft an appropriate remedy." *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015). This remedy can include dismissal with prejudice. *Trujillo-Alvarez*, 900 F. Supp. 2d at 1170, 1180–81.

The Court, thus, has unambiguous authority to manage its own criminal cases and to fashion remedies where the defendant's constitutional rights are jeopardized. The government has cited no authority to the contrary. While the Court cannot tell the government whether to pursue an immigration removal case or not, it can dismiss a criminal case when the government's competing priorities result in a breach of the defendant's constitutional rights to counsel and due process. The Constitution, obviously, overrides both the BRA and INA.

**B.     The Distance Between Mr. Parias and his Counsel has Unreasonably Restricted His Access to Counsel and Ability to Prepare a Defense**

**1.     Lack of Access**

The government claims Mr. Parias has reasonable access to counsel, attaching a declaration from Deportation Officer Jolene Velasquez purporting to detail attorney visit availability at Adelanto. Nothing in Officer Velasquez's declaration relieves defense counsel of the exceptional burden they face to regular communication with Mr. Parias. In fact, it confirms many of the obstacles.

As an initial matter, there are inconsistencies between Officer Velasquez's claims and the defense's experience with Adelanto. Last week, on December 12, 2025, the defense team contacted the facility by email to schedule a video-teleconference (VTC) meeting with Mr. Parias. *See* Declaration of Diana Miner, ¶ 2. Officer Stephanie Torres responded to the email, stating the defense could schedule an appointment *either* through "ERO eFile," an electronic scheduling system, or by calling (760) 561-6208. *Id.* The defense called the phone number, given the time sensitivity, but Officer Torres, who answered the phone, declined to schedule the VTC appointment because, as criminal defense attorneys and not immigration attorneys, the defense needed "ICE's permission" prior to scheduling calls. *Id.* ¶ 4. She provided an email address (apcero000-50@ice.dhs.gov) where we could request permission. *Id.* On the same date, the defense emailed apcero000-50@ice.dhs.gov requesting VTC visitation permission, and as of 2:30 PM today, it had not received a response. *Id.*

4

1   On today's date, the defense called to schedule a legal telephone call with Mr. Parias following the instructions on the Web site print out attached as Exhibit 1 to Officer Velasquez's Declaration. *Id.* ¶ 6. Officer Torres again answered the call and stated that she could not schedule a call because, again, we are criminal defense attorneys, not immigration attorneys, and because do not have prior consent from ICE to communicate with the detainee. *Id.* She referred us to ERO eFile where we can apply for permission by submitting a form, a change to her prior instructions. *Id.* When we mentioned that Exhibit 1 to Officer Velasquez's Declaration states phone calls can be arranged by calling (760) 561-6208 (the number at which she answered), she replied, "I don't know who Vasquez is, and I have been instructed that if someone discloses that they are criminal attorneys representing a detainee they must have permission from ICE allowing [them] to schedule telephonic or other visits." *Id.*

In our prior attempts to schedule visits, leading up to the filing of this application, we were not informed by Adelanto of the ERO eFile requirement. *Id.* ¶ 7. Further, we were advised by persons answering our calls that VTC visits and phone calls would be limited to Monday through Friday, 8:00 AM to 3:30 PM time frame.[1] *Id.* Though Officer Velasquez says Adelanto will "accommodate defense counsel's request to visit the defendant every day between the hours of 8 AM and 8 PM," Exhibit 1 says visitation can only be scheduled between the hours of 8AM and 10 AM, then from 12 PM to 5 PM. *See* Velasquez Decl., Exhibit 1, at 6.

The defense attempted to reach Officer Velasquez today, starting at 9:28 AM, to seek clarification about some of her claims. *Id.* 8. Counsel left a voicemail with his personal cell phone to facilitate a call back. *See* Declaration of Marvely Rivera ¶ 2. Counsel, after several hours, did not receive a call back. *Id.* The defense team tried

---

[1] At the hearing on December 9, 2025, counsel may have stated, but does not precisely recall, that in person visits were also limited to 8:00 AM to 3:30 PM. This was an error on counsel's part that resulted from a misinterpretation of notes provided to counsel by his staff.

5

calling and was able to reach Officer Velasquez at 2:33 PM. *Id.* Officer Velasquez clarified several matters in her declaration, but was unsure or ambiguous about others.

  First, she confirmed that ICE needs to approve criminal defense attorney visits because they are not counsel of record in immigration cases. *See* Miner Decl. ¶ 9. The defense informed her that we sought approval on December 12, 2025, but had not heard back. *Id.* Officer Velasquez could not locate the email, and asked the defense to resend it. *Id.* The defense confirmed the email address and attempted to resend (forward) the original message. *Id.* After approximately 10-15 minutes of back and forth, Officer Velasquez realized the defense had been provided with an inaccurate email address and provided the correct one (apcero501-999@ice.dhs.gov). *Id.* Upon receipt of the email at the new address, she stated counsel could now visit Mr. Parias, but was unable to provide any form of confirmation. *Id.* When asked repeatedly to provide confirmation, she said she would "send an email" to ensure people are aware. *Id.*

  When questioned about the inconsistency between her declaration, which says legal visits can be scheduled starting at 8 AM until 8 PM, and the different times listed in Exhibit 1, she conceded that the 8 AM to 8 PM time bracket is not exactly accurate. *See* Rivera Decl. ¶ 3. Visits cannot be scheduled during count, which takes place between approximately 10:30 AM and 11:30 AM; nor can they be scheduled in the time leading up to count. *Id.* Counsel understands "count" to mean when the facility is checking on the physical presence of every detainee. *Id.* Office Velasquez further stated that there is an afternoon count that starts at approximately 3:00 PM (she could not provide the specific time), during which visits could also not be scheduled. *Id.* She referenced other counts throughout the day, but could not remember specific times. *Id.*

  Importantly, Officer Velasquez seemed to have no idea regarding the claim made in paragraph 6 of her declaration, which states, "In this particular case and under these specific circumstances, ICE will waive the one-hour time limit." *See* Miner Decl. ¶ 15. She stated that visit times are limited to an hour, but *might* be extended upon request.

6

*Id.* But she was unaware of any specific or special accommodations made for Mr. Parias' case. *Id.*

On today's date, counsel registered for ERO eFile and requested a legal call for Wednesday, given the upcoming status conference on December 18, 2025. *See* Miner Decl. ¶¶ 10, 11. Adelanto's system stated that the soonest a call could be schedule is 10 days from today, on Christmas morning. *Id.* There were no available time slots, other than on Christmas morning, for the foreseeable future, including during the months of January, February, March, April, and May. *Id.* ¶¶ 12, 13.

Adelanto is not prepared to make Mr. Parias available to counsel by phone or VTC for the foreseeable future, other than on Christmas day, according to its own systems. The defense team asked Officer Velasquez if anything could be done to expedite the availability of a VTC call or phone, and she said she was not aware of how it could be expedited or to whom an appeal can be lodged. *Id.* ¶ 14.

Counsel's only option to communicate with Mr. Parias is to travel to Adelanto in person. Adelanto is a 170-mile round trip for each visit, *see* Marvely Decl. ¶¶ 5, 6, and the amount of time it would take to complete that trip varies with Southern California's unpredictable traffic conditions. As of the writing of this reply, traffic conditions show it would take counsel three hours and nine minutes to arrive in Adelanto. *Id.* This does not include the wait time for the visit, or the drive back. In the best of conditions, it can take approximately two hours for each leg of the trip. *See* Declaration of Counsel, ¶ 2. The remoteness of Mr. Parias' detention has, and continues, to deprive him of the ability to communicate with his counsel and prepare his defense.

### 2. Prejudice

The government disputes that Mr. Parias has shown sufficient prejudice to justify dismissal, but the prejudice is ample and obvious. As stated in the opening brief, the defense team has been unable to review *any* discovery with Mr. Parias, and that has not changed. *Id.* ¶ 3. The defense attorney's schedules have not permitted a single visit to Adelanto, given its distance. *Id.* ¶ 2. And Adelanto has failed to make Mr. Parias

available by phone or VTC, though even if it had, those media would not adequately allow for harboring a trusting attorney-client relationship, discovery review, discovery analysis (including of videos, where the crux of this case lies), and defense investigation strategy development. This in turn has limited our ability to investigate Mr. Parias' defense and timely file motions on his behalf. The government has invited some of the prejudice with its delay in producing discovery, including making productions after the discovery cut off deadline, including on today's date. *Id.* ¶ 4. While the Court can exclude this discovery as late, the tardiness still prejudices the defense, because it cannot expeditiously review it with Mr. Parias to determine if the information produced (or information that might be learned from it through independent defense investigation) helps advance the defense theory.

Were Mr. Parias properly released on bond, as two officers of this Court have now ordered, the defense team could already have reviewed the discovery with him in full, probably twice over. As it stands now, the defense remains at a standstill, unable to make meaningful progress toward preparing for trial, which starts in 15 days, because of our Mr. Parias's remote detention.

The government cites to *United States v. Zarate*, 2019 WL 6493927 (D. Nev. Dec. 2, 2019), but that case has no value to the matters at hand. In that case, the defendant was denied access to counsel for a "short period of time," but the court concluded the fact did not support a finding of prejudice. 2019 WL 6493927, at 4. The case does not state how long this "short period of time" lasted. In any case, the decision reflects one district court's analysis of the facts before it. The facts for Mr. Parias are much different and more severe than denial of access for a "short period of time." Mr. Parias has been functionally denied access to counsel for weeks, including during the most pivotal pretrial preparation time. The Court has abundant grounds on which to find dismissal with prejudice is sufficiently tailored to the constitutional injuries Mr. Parias has, and continues, to suffer. *United States v. Morrison*, 449 U.S. 361, 364 (1981).

### III.  CONCLUSION

The Court should dismiss the case with prejudice. Mr. Parias's remote detention has violated his rights under the Fifth and Sixth Amendments to the Constitution to access counsel and prepare his defense. The government's opposition has not shown otherwise.

# DECLARATION OF COUNSEL

I, Cuauhtemoc Ortega, hereby state and declare as follows:

1. I am the Federal Public Defender for the Central District of California. I, along with Deputy Federal Public Defender Gabriela Rivera, represent Carlitos Ricard Parias in the above-entitled action.

2. I've regularly checked driving conditions to Adelanto in an effort to fit in an in person visit. In the best of conditions, it can take approximately two hours for each leg of the trip, which doesn't factor in visit wait time or the duration of the visit. This has made it exceptionally difficult to visit Mr. Parias in person; we have not been able to travel to Adelanto to see Mr. Parias even once.

3. Because of the difficulty visiting Mr. Parias, defense counsel has not been able to review any discovery with him.

4. Exhibit 8 is a true and correct copy of an email received from government counsel today showing discovery continues to be produced after the Court's discovery cutoff deadline.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on December 15, 2025, at Los Angeles, California.

     /S/   Cuauhtemoc Ortega
CUAUHTEMOC ORTEGA

10

# DECLARATION OF DIANA MINER

I, Diana Miner, hereby state and declare as follows:

1. I am the executive legal assistant to Cuauhtemoc Ortega, the Federal Public Defender for the Central District of California.

2. On December 12, 2012, I contacted Adelanto by email to schedule a video-teleconference (VTC) meeting with Mr. Parias. Officer Stephanie Torres responded to the email, stating we could schedule an appointment *either* through "ERO eFile," an electronic scheduling system, or by calling (760) 561-6208.

3. Attached as Exhibit 1 is a true and correct copy of the email I sent and the response I received from Officer Torres.

4. That same day, I called the phone number, but Officer Torres, who answered the phone, declined to schedule the VTC appointment. She stated that because Mr. Ortega is a criminal defense attorney and not an immigration attorney, we needed "ICE's permission" prior to scheduling calls. She provided an email address (apcero000-50@ice.dhs.gov) where we could request permission. I double checked the email address with her before hanging up. On the same date, I emailed apcero000-50@ice.dhs.gov requesting VTC visitation permission, and as of 2:30 PM today, it had not received a response.

5. Attached as Exhibit 2 is a true and correct copy of the email I sent to apcero000-50@ice.dhs.gov.

6. On today's date, December 15, 2025, I tried to schedule a legal telephone call with Mr. Parias, following the instructions on the Web site print out attached as Exhibit 1 to Officer Velasquez's Declaration in the Government's Opposition to Mr. Parias's *Ex Parte* Application to Dismiss. Officer Torres again answered the call and stated that she could not schedule a call because, again, we are criminal defense attorneys not immigration attorneys, and because do not have prior consent from ICE to communicate with the detainee. She referred us to ERO eFile where we can apply for permission by submitting a form, a change to her prior instructions. When I mentioned

11

that Exhibit 1 to Officer Velasquez's Declaration states phone calls can be arranged by calling (760) 561-6208 (the number at which she answered), she replied, "I don't know who Velasquez is, and I have been instructed that if someone discloses that they are criminal attorneys representing a detainee they must have permission from ICE allowing [them] to schedule telephonic or other visits."

7. In my prior attempts to schedule visits, leading up to the filing of Mr. Parias' *ex parte* application, I was not informed by Adelanto of the ERO eFile requirement. Further, I was told by persons answering my calls that VTC visits and phone calls are limited to Monday through Friday, 8:00 AM to 3:30 PM time frame.

8. The defense attempted to reach Officer Velasquez today, starting at 9:28 AM, to seek clarification about some of her claims. I was on the call.

9. Officer Velasquez confirmed that ICE needs to approve criminal defense attorney visits because they are not counsel of record in immigration cases. I informed her that I sought approval on December 12, 2025, but had not heard back. Officer Velasquez could not locate my email, and asked me to resend it. I confirmed the email address with her, then attempted to resend. After approximately 10-15 minutes of back and forth, Officer Velasquez realized I had been provided with an inaccurate email address and provided a correct one (apcero501-999@ice.dhs.gov). Upon receipt of the email using the new email address, she stated Mr. Ortega could now visit Mr. Parias, but was unable to provide me with confirmation. When I asked her several times to provide me with confirmation, she said she would "send an email" to ensure people are aware.

10. On today's date, I registered Mr. Ortega for ERO eFile and requested a legal call for Wednesday, given the Court's upcoming status conference on December 18, 2025. Adelanto's system stated that the soonest a call or VTC could be schedule is 10 days from today, on Christmas morning.

12

11. Exhibits 3 and 4 are true and correct copies of the information provided to me by ERO eFile, which shows the next availability for a phone call or VTC on Christmas Day.

12. I searched for an appointment after Christmas Day and December 26, 2025, and there was no availability at all for the month of January, February, March, April, or May for either legal calls for VTC meetings.

13. By way of example, attached as Exhibits 5 and 6 are true and correct copies of the information provided to me by ERO eFile, which shows no availability for legal calls and VTC in January.

14. I asked Officer Velasquez if anything could be done to expedite the availability of a VTC call or phone, and she said she was not aware of how it could be expedited or to whom an appeal can be lodged.

15. Officer Velasquez seemed unfamiliar with a portion of paragraph 6 of her declaration, which states, "In this particular case and under these specific circumstances, ICE will waive the one-hour time limit." She stated that visit times are limited to an hour, but might be extended upon request. She was unaware of any specific or special accommodations made for Mr. Parias' case.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on December 15, 2025, at Los Angeles, California.

                                     /s/   Diana Miner
                                     DIANA MINER

### **DECLARATION OF MARVELY RIVERA**

I, Marvely Rivera, hereby state and declare as follows:

1. I am an investigator with the Office of the Federal Public Defender for the Central District of California. I have been assigned to work on defendant Carlitos Ricardo Parias's case.

2. Cuauhtemoc Ortega, Diana Miner, and I attempted to reach Officer Velasquez today, starting at 9:28 AM, to seek clarification about some of the claims in her declaration, which was submitted by the government as part of its Opposition to Mr. Parias's *Ex Parte* Application to Dismiss. Mr. Ortega left a voicemail with his personal cell phone to facilitate a call back. We did not hear back from Officer Velasquez for several hours. We tried calling her back, and were able to reach her, at 2:33 PM. We asked her questions regarding her declaration.

3. When questioned about the inconsistency between her declaration, which says legal visits can be scheduled starting at 8 AM until 8 PM, and the different times listed at Exhibit 1, page 6, she conceded that the 8 AM to 8 PM time bracket is not exactly accurate. Visits cannot be scheduled during "count," which runs from approximately 10:30 AM to 11:30 AM. She added that detainees would not be brought down in the time leading up to count, but was unable to provide more details. She further stated that there is an afternoon count that starts at approximately 3:00 PM (she could not provide the specific time), during which visits could also not be scheduled. There are other "counts" during the day, but she could not recall when they took place. Visits would not be allowed during these "counts."

4. After speaking with Officer Velasquez, I mapped directions to Adelanto at Mr. Ortega's request. It is an approximately 170-mile roundtrip journey. The driving time from the FPD's Offices to Adelanto, one way, at the time of my search, totaled 3 hours and 14 minutes.

14

5. Attached as Exhibit 7 is a true and correct copy of the directions I generated showing the driving time of 3 hours and 14 minutes.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on December 15, 2025, at Los Angeles, California.

    /S/   *Marvely Rivera*   .
MARVELY RIVERA

15