TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
CHRISTOPHER JONES (Cal. Bar No. 343374)
BARR BENYAMIN (Cal. Bar No. 318996)
Assistant United States Attorneys
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-7383
    Facsimile: (213) 894-0141
    E-mail:   christopher.jones4@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:25-cr-00904-FMO |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENSE STATUS REPORT REGARDING TRIAL (DKT. 73) |
| v. | |
| CARLITOS RICARDO PARIAS, | |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Christopher Jones and Barr Benyamin, hereby files its Response to Defense Status Report Regarding Trial (Dkt. 73).

//

This Response is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 24, 2025           Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division


          /s/
CHRISTOPHER JONES
BARR BENYAMIN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

The government submits this response to address defendant CARLITOS RICARDO PARIAS's Status Report Regarding Trial (Dkt. 73), filed on December 24, 2025. Defendant's Status Report is based on the declaration of his counsel, Gabriela Rivera.

The government has worked diligently to provide discovery to the defense in this reactive case that stemmed from the arrest of defendant on October 21, 2025. To date, the government has made nine productions of discovery totaling over 1,000 pages. This includes the November 26, 2025 production of body-worn camera footage worn by the law enforcement victim and a law enforcement witness on October 21, 2025 (USAO_000030-USAO_000031) showing defendant committing the charged crimes, as well as other evidence produced to the defense before the December 5, 2025 discovery cutoff.[1]

Complicating matters, however, is the fact that the evidence in this case includes not simply evidence relating to defendant's charged conduct (the investigation of which was led by Homeland Security Investigations), but also evidence relating to the Federal Bureau of Investigation's ongoing investigation of the discharge of a firearm by law enforcement during defendant's October 2025 arrest. Notably, the shooting occurred <u>after</u> defendant committed the charged crimes, and the government does not seek to introduce at trial evidence obtained from this independent FBI investigation (the

---

[1] Defense counsel does not acknowledge this early video production in her declaration, focusing instead on another video of the incident that government counsel first learned of and received on December 3 and disclosed to defense on December 10, 2025. As stated in other filings, the government does not seek to introduce at trial this video, or any evidence produced after December 5, 2025.

1  government also maintains such evidence is not relevant or admissible
2  at trial).
3     Although the FBI's investigation was initiated shortly after the
4  shooting (which is why the FBI was conducting interviews in late
5  October 2025), the government was unable to obtain the FBI reports
6  until they were finalized.  As such, the HSI case agent in this case
7  only obtained a portion of the FBI's investigative file on or about
8  December 4, 2025, and the remainder of the file on December 12 and
9  18, 2025.
10     The government produced to defense counsel hundreds of
11 photographs from the FBI file on December 5, 2025.  The substance of
12 the FBI investigative file required a protective order, however,
13 because it involved third-party PII and an ongoing investigation.
14 Defense counsel and the government stipulated to a protective order
15 and the Court entered it on December 19, 2025.  (Dkt. 70.)  The
16 government produced the remainder of the FBI's investigative files in
17 its possession on December 19 and 21, 2025, pursuant to the
18 protective order.  As discussed in the government's declaration
19 regarding discovery (Dkt. 74), the government received and produced
20 on December 24, 2025 an HSI report summarizing the investigation.
21     Defense counsel is aware from her review of the discovery that
22 FBI reports in the shooting investigation were being drafted as late
23 as December 12, 2025.  Moreover, defense counsel is also aware from
24 the FBI report log she received as part of the discovery that the
25 witness reports for interviews that occurred on October 21, 2025 were
26 not created until between October 27, 2025 and December 4, 2025, and
27 not October 21, as she claims.  (See Dkt. 73 ¶ 4(c).)  These reports,
28

2

which included third-party PII, were produced pursuant to the protective order.

As the government has repeatedly stated in filings, it does not plan to use any evidence produced after the December 5, 2025 discovery cutoff in its case-in-chief. The government has also taken additional steps to satisfy discovery requests by the defense. For instance, defense counsel asked to view defendant's vehicle in person. That viewing occurred in South Los Angeles on December 19, 2025, a date that was convenient for defense counsel's investigator.

The government has also worked diligently to investigate and produce Henthorn disclosures, as addressed in the government's filing of December 15, 2025. (Dkt. 64.)[2] On December 18, 2025, the government produced under the protective order a five-page letter and approximately 142 pages of exhibits which contain potential Henthorn disclosures for all law enforcement witnesses that the government intends to call and all of the federal law enforcement officers that were at the initial scene on October 21, 2025, regardless of whether the government plans to call them. As the government has stated in its trial brief (Dkt. 72 at 8), the government only intends to call three law enforcement witnesses, which means there is a small universe of Henthorn material to review. The government inquired on December 18 and 24, 2025 whether defendant intended to use any of this information for impeachment at trial, and defense counsel has not yet responded.

---

[2] The defense already responded to the government's ex parte request to extend the Henthorn disclosure deadline (see Dkt. 64), yet uses its current filing to try to re-raise the issues. (See Dkt. 73 ¶ 4(a).)

3

In parallel to its efforts on discovery and Henthorn disclosures, the government has also moved expeditiously to prepare for trial, including filing its Trial Memorandum (Dkt. 42), which was filed about three hours after the December 22 deadline.  The government has filed a separate document today confirming that it has complied with its Brady and Rule 5(f) obligations.  Dkt. 74.  The government also circulated proposed jury instructions to the defense and is awaiting a response on timing for a meet and confer on them.  Further, the government sent defense a draft joint exhibit stipulation, a list of proposed factual stipulations, and questions regarding trial logistics.  To date, defense counsel has not disclosed to the government any intent to rely on an affirmative defense or expert testimony, has not provided any reciprocal discovery, has not sent the government any proposed jury instructions, and has not reached out to government counsel to meet and confer on the trial.  Defense counsel also has not reached out to the government to meet and confer regarding its intended filing of a motion to dismiss due to government misconduct.

In sum, the government has worked diligently to produce discovery, including the FBI's large investigative file which government counsel did not receive until December 2025, and made a robust Henthorn disclosure.  The government has also made significant efforts, detailed above, to prepare for the trial as scheduled.  Defense counsel does not allege that they are missing any information and -- as explained above -- the government has produced information pursuant to its discovery obligations in a reasonable timeframe and has agreed it will not use discovery produced after the discovery cutoff in its case.

Finally, defense counsel represents that defendant will not be prepared to stand trial on December 30, 2025.  (Dkt. 73 at 4.)  As previously noted in a filing (Dkt. 68), the government does not oppose a continuance in this matter, which would cure any purported prejudice that exits.  While the Speedy Trial Act initially required that trial commence on or before January 13, 2026 (Dkt. 48), defendant's motion to dismiss the case filed on December 10, 2025 (Dkt. 53) remains pending and is a basis for excludable time.  <u>See</u> 18 U.S.C. § 3161(h)(1)(D).  Thus, once that motion is ruled upon, there would still be approximately 36 days remaining on the Speedy Trial clock to set the case for trial, providing ample time for defense counsel to prepare for trial.